New-Haven,
July, 1837.

Mix
v.
Woodward.

MIX *against* WOODWARD.

[In the case of *Mix* v. *Woodward*, *ante*, 262—293, it is stated, that in the opinion delivered by *Bissell*, J., the other Judges concurred. In this, the reporter, who was not present at the last consultation, was mistaken. WAITE, J. dissented; and has since furnished the following opinion.]

WAITE, J. Two questions are presented in this case, for the consideration of the court. One is, whether the declaration is sufficient to entitle the plaintiff to judgment in his favour, after verdict. The other is, whether the judge on the circuit decided correctly the several questions stated in the motion, respecting the admissibility of evidence.

1. The libel, upon the face of it, refers to the " writer in the *Register*," and charges *him* with having been deprived of the office of justice of the peace, for mal-practice. It refers to no one else, and upon the face of it, is a libel upon no other person. If it appeared from the declaration that the plaintiff was that writer, he would have no difficulty in maintaining his action. But he has neither alleged, that he was the writer, nor that he was ever reputed to have been the writer. Has he, therefore, sufficiently shewn, that he was the person libelled ?

All that is averred to shew that fact, is, that for two years prior to the publication, he had been a justice, and had not been re-appointed to that office at the session of the General Assembly, in *May*, 1834 ; that the libel was published " of and concerning him ;" and that by the term " writer in the *Register*," the defendant meant the plaintiff. It is, indeed, averred, that the plaintiff was an attorney and counsellor at law ; but as the libel does not refer to any such profession, that averment is not material in considering the sufficiency of the declaration.

Had the plaintiff omitted what is stated, respecting his having held the office of justice, there could be no question but that the declaration would be bad, and that the judgment must be arrested. It has been too often decided, to be now questioned, that an *innuendo* is only explanatory of some matter already expressed, and cannot add to, or enlarge, extend or change the sense of the previous words ; and that the matter to which it alludes, must appear from the antecedent parts of the declaration. 1 *Chitt. Plead.* 383. *Rex* v. *Horne*, 2 *Cowp*. 684. *Hawkes* v. *Hawkey*, 8 *East* 427. 431. *Harvey* v *French*,

2 *Moore & Scott,* 591. In such case, there would be nothing upon the face of the record authorising the inference that the plaintiff was the person meant.

Does the allegation that the plaintiff had been a justice, and was not afterwards re-appointed to that office, vary the case? The constitution of this state provides, that a sufficient number of justices shall be annually appointed in each county ; and that no one shall be capable of holding that office after he arrives at the age of seventy years. It must, therefore, often occur, that those who have been appointed to that office, may not be re-appointed the succeeding year. Age, removal from the state, and many other causes, may operate to prevent a re-appointment. Will it do, therefore, to say, that the fact of his not having been re-appointed a justice, will be sufficient to shew, that he was the person libelled? For aught that appears, there were many other justices who were not re-appointed that year; and upon that principle, each one of them might claim that he was the person libelled, and sue for damages. But one single individual was libelled ; and yet numbers may severally sustain their actions.

But further ; the plaintiff has not even shewn that he was the only justice not re-appointed that session, or that there were any circumstances connected with his failure of a re-appointment, from which the community might draw the inference that he was the person alluded to in the libel. The simple naked fact that the plaintiff had been a justice, and was not re-appointed, is all that can be relied upon to shew the application of the slanderous charges to him.

In order to enable the plaintiff to sustain this action, it is not sufficient for him to shew, that the defendant *intended* to calumniate him ; for that alone would do him no harm ; but he must shew that the defendant has accomplished that intent; that the words used in the libel were understood, by those who read them, as fixing upon the plaintiff the slanderous imputations. Whatever may have been the *intent* of the defendant in the publication, and however gross the libel, it is no libel upon the plaintiff, unless it so describes him as that those who read it might apply to him the charges. *Bourke* v. *Warren & al.* 2 *Car. & Payne* 307. *Fisher* v. *Clement,* 10 *Barn. & Cres.* 472.

If we refer to some of the older decisions as authorities upon

*New-Haven,*
*July, 1837.*

Mix
*v.*
Woodward.

this subject, they will be found most decidedly against the sufficiency of the declaration. Thus, where it was alleged in a declaration for slander, that the defendant said, " thy brother" (meaning the plaintiff) " has taken a false oath," the declaration was holden bad after verdict, because there was no averment that the words were spoken to the brother of the plaintiff. *Slocomb's* case, *Cro. Car.* 442. So where the defendant said, " thy father is a thief," all the judges were of opinion, that the declaration, which did not contain an averment that the words were addressed to the plaintiff's son, was insufficient after verdict. *Phelps* v. *Lane, Cro. Car.* 92. Again, where the defendant said, " your father has killed *Nicholas Rund,*" the judgment was arrested, for the same cause. *Starkie* on *Slander* 210. In all these cases, there was an *innuendo* that by the words " brother," and " father," the defendant meant the plaintiff.

It is true, these decisions were made at a time when plaintiffs in actions of slander were holden to great strictness; and it has been thought by some, that the rules of law were too rigourously applied. Yet when we consider the great number of express decisions upon this subject, it may well be doubted, whether the law has not become too firmly established to be changed.

But however this may be, I apprehend the more modern decisions as fully support the defendant's claim. In a very late case before the court of *King's Bench* in *England,* where, in an action for slander, the plaintiff alleged in his declaration, that he was a physician, and that the defendant used certain words " of and concerning him in his profession," imputing to him the crime of adultery, after verdict for the plaintiff, judgment was arrested, because it did not appear from the declaration, in what manner the words used were connected with the plaintiff's profession. *Denman,* C. J., in delivering the opinion of the court, said, " after a full examination of the authorities, we think that in actions of this nature, the declaration ought not merely to state, that such scandalous conduct was imputed to the plaintiff in his profession, but ought also to set forth *in what manner* it was by the speaker connected with that profession. *Ayre* v. *Craven,* 2 *Adol. & Ellis* 2.

The same principles are also recognized, by Baron *Alexander,* in delivering the opinion of the judges in the case of *Hall*

v. *Blandy*, 1 *Young & Jervis* 480. in the court of *Exche-quer.*   He observes, that where that which is termed a libel, does not necessarily, upon the face of it, impute one, it is requi-red to connect it with certain facts, by way of inducement, in order that, so explained, it may amount to a libel, and that there may be a sufficient certainty, that what is therein stated relates to the plaintiff in the action.   If the plaintiff is referred to by name, that is sufficient.   He adds, it may be necessary to state in the introductory part of the declaration, 1. the extrin-sic facts and circumstances, by which the words become action-able ; 2. that the words relate to these facts, by laying a *collo-quium ;* and 3. connecting averments, called *innuendoes,* by which such parts of the publication as want explanation, are referred to the introductory facts.   By this process, the extrin-sic facts, incorporated, as it were, into the defendant's publica-tion, become an integral part of the plaintiff's case ; and the whole forms one entire slanderous charge upon the face of the record.   *Miller* v. *Maxwell,* 16 *Wend.* 9.

But this whole question has very recently been fully consider-ed, by the supreme court of the state of *New-York,* in the case of *Miller* v. *Maxwell,* just cited ; and the doctrine there estab-lished, and sustained with learning and ability, completely sustains the claim of the defendant in this case.   That was an action for a libel.   The plaintiff in his declaration stated, that an article had been published in a news-paper, under the signature of *M. B. ;* that the defendant untruly alleged, that the plaintiff was the writer of that article, and published a cer-tain libel of and concerning the plaintiff, in his character of a physician, containing, among other words, the following : "We were lately amused, by reading the article signed *M. B.* At first, we supposed it was written by *a celebrated surgeon of whiskey memory ;* but on a second perusal, concluded it was from the pen of *a noted steam doctor.*   It is a great pity the writer did not give a brief history of a few cases, which must have fallen under his personal observation."   The libel then proceeded to describe three cases of gross mal-practice. The plaintiff further stated, that he had been consulted profes-sionally in three cases, in many respects resembling those de-scribed in the libel ; and then averred, that by the terms *celebrated surgeon of whiskey memory,* the defendant meant the plaintiff, and intended to insinuate that he had been guilty

*New-Haven,*
*July, 1837.*

Mix
*v.*
Woodward.

of mal-practice in one of those cases, (in which whiskey had been administered to the patient,) and that by the term *steam doctor*, he meant ironically to designate and describe the plaintiff, and cause it to be believed, that he was the writer of the article signed *M. B.*, and that the defendant, in the three cases stated, meant to charge the plaintiff with ignorance and mal-practice in his profession. The court adjudged the declaration bad, for want of averments, shewing that the plaintiff was known by any of the appellations contained in the libel, or otherwise sufficiently shewing that the plaintiff was the person libelled.

*Nelson,* C. J., in delivering the opinion of the court, among other remarks, said : "It is manifest from a perusal of the libel in question, that there are no expressions contained in it, so far designating the plaintiff, as to enable any one reading it to apply to him the slanderous words. The writer of the article is directly referred to, and is the person whose practice as a physician and surgeon, is, upon the face of the publication, impeached. The declaration, however, expressly disaffirms the authorship of the plaintiff, and seeks to maintain the action upon the assumption that the plaintiff was attacked under the assumed name of the author ; in other words, that the defendant, while assailing the professional character of the author of the article, intended the plaintiff." — — — " The plaintiff has set out, by way of *innuendo,* that he was intended, by the terms *surgeon of whiskey memory,* and *steam doctor.* Now, an *innuendo* may apply what is already expressed, but cannot add to, enlarge, or change the sense of the preceding words." — — — " In this case, I am unable to find any thing upon the record, any introductory matter authorizing or warranting the inference drawn, that the words used meant the plaintiff." — — — " If, in the introductory part of the declaration, it had been averred, that the plaintiff was known in the community, by the name of *the surgeon of whiskey memory,* or *steam doctor ;* or that the defendant had been in the habit of giving him these appellations in his neighbourhood, or among his associates ; then the *innuendo,* in connexion with such averments, would be warranted ; and, supposing the facts to be proved, would establish a case shewing that the plaintiff was libelled under these names."

" Again ; the plaintiff supposes he has been libelled in his

professional character, in respect to his attendance and services
in the three cases ; and he asks the court to infer this from the resemblance between them and the cases mentioned in the
publication. —— —— Hundreds of physicians and surgeons may have had cases, in the course of their professional services, corresponding as closely with those described in the libel. —— —— — So long as the identity rests entirely in the description of the cases, without in some way designating the individual patient, it will be illusory and inconclusive."

"Upon the whole, the great and radical defect in all the counts, is, that assuming every fact stated in them to be proved, the plaintiff does not shew, that he has been libelled. He is not alluded to, by name ; and the extrinsic facts and circumstances stated to warrant the conclusion that he was the person referred to, under the terms of *surgeon of whiskey memory*, *steam doctor*, *physician* and *surgeon*, or author of the article *M. B.*, are wholly insufficient. With the aid of all this introductory matter, neither count presents a case shewing to the court that any person reading the libel could thus understand the expressions. Without this, no injurious impression could be made upon his mind respecting the character of the plaintiff, professional or otherwise. The publication, therefore, cannot be a libel upon him."

Upon the whole, it is impossible for my mind to resist the conclusion, that both upon principle, and the authority of adjudged cases, the declaration, in the present case, is manifestly insufficient ; and that, consequently, the defendant's motion in arrest ought to prevail.

2. Were the several questions respecting the admission of testimony, correctly decided ?

The court admitted evidence of facts, not stated in the declaration, to shew, that the plaintiff was the person alluded to in the libel. In this respect, I think the court erred. I have already attempted to shew, that it is necessary that it should appear upon the face of the declaration, that the plaintiff was the person libelled. If the plaintiff is referred to by name, in the libel, that is sufficient. If he is not, then it is necessary that the declaration should contain such averments, as, taken in connexion with the libel, will shew that the plaintiff was the person intended. All that is required on the part of the plaintiff, is, to prove those averments. Any further testimony

New-Haven,
July, 1837.
—————
Mix
v.
Woodward.

to shew that the plaintiff was libelled, was unnecessary and improper; unnecessary, because it was sufficient for him to prove the facts stated in the declaration; improper, because the defendant cannot be supposed to be prepared to meet such testimony. The object in requiring that the necessary facts should be stated in the declaration, is, to apprize the defendant of what he must be prepared to meet. The evidence, therefore, to shew that the plaintiff was the person libelled, ought to have been confined to the proof of the allegations con· tained in the declaration.

But the subsequent publications by the defendant, were admitted to prove that the plaintiff was the person libelled in the first publication; and this, without any allegations justifying the admission of such testimony. As has been before stated, the question is, not simply what the defendant *meant* by his first publication, but what was the *effect* upon the community, so far as the plaintiff was concerned. Had it been entirely uncertain, who was alluded to, in the first publication, and the defendant had shewn, by subsequent publications, that the plaintiff was the person libelled in the first, the plaintiff could have undoubtedly so declared as to have made both publications evidence, and have maintained his action. But the difficulty is, there are now no averments authorizing the admission of the subsequent publications. The plaintiff has declared in the same manner as if but a single publication had been made; and it is not pretended, in the declaration, that the first publication became libellous, in consequence of the others.

With respect to the propriety of admitting other libels to shew the malice of the defendant, I entirely concur in the opinion expressed, by the judge assigned to give the reasons of the court.

The defendant offered evidence to prove the several facts specified in the notice, for the purpose of justifying the publication; but the court rejected it for that purpose. I am by no means certain, that those facts do not here constitute what may be termed *packing* a jury; and that the term would be so applied and understood by those who read the publication. The mode of selecting jurors here, is materially different from what it is in *England;* and when the expression *packing* a jury, is used in reference to the conduct of a justice in his official capacity, it is difficult to understand how he can be guilty

of such misconduct, except in the manner stated in the notice. It is true, there is a single case, where a justice himself has power to select all the jurors; as where a jury of inquest is summoned. But it may well be doubted, whether the term has ever been used in relation to the conduct of a justice in such a case. At any rate, I am satisfied, that the term has never been *confined* to that single case. In my opinion, the evidence ought to have been submitted to the jury, for them to determine in what manner the expressions used in the libel were understood in the community, and by those who read them; and I think the judge erred in withdrawing the evidence from their consideration, in the manner he did. For if the charge contained in the libel was, in point of fact, understood by those who saw it, as implying the misconduct stated in the notice, then the plaintiff has sustained no other injury than he would have done, if the libel had set forth the facts contained in the notice.

In the case of *Hunt* v. *Algar* & al. 6 *Car. & Payne* 245, the defendants had copied into their newspaper a libel upon the plaintiff from another paper, and added, at the end of it, the word "*fudge.*" Lord *Lyndhurst*, C. B., left it to the jury to say, what was meant by the addition of that word; whether to vindicate the character of the plaintiff, or whether it was introduced for the purpose of creating an argument in case proceedings should be afterwards taken.

The same course, in my opinion, ought to have been adopted by the court below, in relation to the misconduct stated in the libel.

In the several particulars mentioned, the judge, in my opinion, erred.